UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**TOKIO MARINE AMERICAN INSURANCE CO**     **CASE NO. 2:22-CV-05366**

**VERSUS**     **JUDGE JAMES D. CAIN, JR.**

**ACE AMERICAN INSURANCE CO**     **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is "Ace American Insurance Company's Motion for Summary Judgment" (Doc. 27) wherein, Defendant, "Ace" moves for summary judgment in its favor. Ace maintains that CB&I, LLC ("CB&I") is not a named insured, nor an additional insured under the Ace policy, therefore the claims for defense and indemnity asserted by Plaintiff, Tokio Marine American Company ("Tokio") must be dismissed.

## FACTUAL STATEMENT

On June 12, 2019, Ricky Cook alleges that he sustained injuries in an electrocution accident that occurred at the Entergy Lake Charles Power Station, while employed by NES Global, Ltd. ("NES"), but working on behalf of Mitsubishi Hitachi Power Systems of America ("MHPSA").[1] Cook was to provide and did provide Technical Field Advisor ("TFA") duties at the Lake Charles Power Station.[2] CB&I, LLC ("CB&I") issued a purchase order to MHPSA, which included "Qualified Field Advisory Service Engineer during Installation, Start-up, Testing, and Commissioning per Exhibit I, 3.0."[3]

---

[1] Plaintiff's exhibit, Timothy Thornton Declaration, attached exhibit A, ¶ 12, Petition for Damages.
[2] Doc. 27-4, p. 3, ¶ ¶ 12-15.
[3] Plaintiff's exhibit, Timothy Thornton Declaration, attached exhibit B.

Cook filed a lawsuit in the 14th Judicial District Court,[4] wherein he alleged that he sustained injuries as a result of the June 12, 2019, incident.

In this lawsuit, Tokio alleges that at the time of Cook's accident, Cook was employed by NES, providing Technical Field Associate services to MHPSA, "pursuant to the terms and conditions of a June 12, 2019 Purchase Order[]#5000054483 between MHPSA and NES."[5] During the relevant time period, Ace issued a Commercial General Liability Policy (the "Ace Policy") to NES.[6] Neither MHPSA nor CB&I are named insureds under the Ace Policy.[7] Section II of the Ace Policy provides the following as to "WHO IS AN INSURED:"

1. If you are designated in the Declarations as:
    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as managers.
    d. An organization other than a partnership, joint venture or limited liability company, you are an insured, your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders,
    e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.
2. Each of the following is also an insured:
    a. Your "volunteer workers" [or] "employees" [for certain purposes].
    b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

---

[4] *Ricky Cook v. Entergy Corporation, et al.*
[5] Complaint, Doc. 1, ¶ ¶ 12-13.
[6] Defendant's exhibit 1.
[7] *Id.*, Common Policy Declarations.

  c. Any person or organization having proper temporary custody of your property if you die [for certain purposes and duration].
  d. Your legal representative if you die, but only with respect to duties as such. . .
3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

The Ace Policy also contains a "Blanket Additional Insured(s) Written Contract Endorsement," in pertinent part as follows:

> 3. Section II, Who is an Insured, subsection 2, shall be amended to include as insured(s) any natural person or organization with which any Named Insured has a written contract (i) in effect during the policy period and (ii) executed prior to the "bodily injury," "property damage" or "personal and advertising injury" occurring or being committed, if such written contract requires that this policy include such natural person or organization as an insured hereunder.  However, coverage for such insured under this endorsement is limited as follows:
>  a. If the Limits of Insurance stated in the Declarations exceeds the limits of insurance required by such contract, the insurance provided by this endorsement shall be limited to the limits of insurance required by such written contract.  This endorsement shall not increase the Limits of Insurance stated in the Declarations.
>  b. Such natural person or organization is an insured solely for "bodily injury", "property damage" or "personal and advertising injury" caused by an "occurrence" or an offense arising out of premises used to conduct your business operations that was caused solely by:
>  iii. you or your "employees" acting on your behalf; and
>  iv. performed on behalf of such insured and within the scope of your written contract with such insured.
>  c. Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to such insured.[8]

The Ace Policy contains an "Additional Insured—Designated Person or Organization" endorsement that provides, in pertinent part, as follows:

---

[8] *Id.* ACE_American-000101.

C. **Section II – Who is an Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
    1. In the performance of your ongoing operations; or
    2. In connection with your premises owned by or rented to you.
    However:
    1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
    2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

D. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits of Insurance:**
If coverage provided to the additional insured is required by a contract of agreement, the most we will pay on behalf of the additional insured is the amount of insurance;
    3. Required by the contract or agreement; or
    4. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.[9]

The "Schedule" states under "Name Of Additional Insured Person(s) or Organizations(s)": "Any person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss."[10]

The Ace Policy Schedule of Forms lists two additional insured endorsements:

a. CG 2010 10-01 ADDITIONAL INSURED – OWNERS, LESSEES OR

b. CG 2037 10-01 ADDITIONAL INSURED – OWNERS, LESSEES OR[11]

---

[9] Defendant's exhibit 1, Endorsement, ACE__American-000127).
[10] *Id.*
[11] Doc. 27-3, p. 12.

NES did not have a written contract with CB&I at the time of Ricky Cook's accident. The Ace Policy contains an "Employer's Liability" exclusion, which excludes coverage for "'[b]odily injury' to: (1) An 'employee' of the insured arising out of and in the course of . . . (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business."[12]

Cook's assignment with MHPSA at the Entergy Lake Charles Power Station began on or about June 4, 2019. On June 12, 2019, at 10:02 a.m., Ms. Felix/Eckhart sent a follow-up email to MHPSA on behalf of NES requesting a purchase order for Cook's services at the Lake Charles Power Station. Felix/Eckhart was employed by NES as a Senior Recruitment Consultant and was involved in the placement of Cook as an NES employee, in the contract position with MHPSA for temporary field associate work.

NES received the proposed purchase order for Cook's services from MHPSA at the Lake Charles Power Station at 10:41 a.m. on June 12, 2019, when Katherine Burgess of MHPSA emailed a copy of the proposed purchase order to Felix/Eckhart.[13] In her email to Felix/Eckhart, Burgess provided the proposed purchase order and specifically stated: "Please sign and return as your acceptance." Burgess also included three exhibits containing "terms and conditions" that would govern the proposed purchase order.[14]

The purchase order proposed by MHPSA was not immediately signed and returned to MHPSA by an NES representative. On June 24, 2019, Burgess emailed Felix/Eckhart requesting that Felix/Eckhart provide MHPSA "the signed [purchase order] confirmation"

---

[12] Defendant's exhibit 1, p.2, Ace_American-000103.
[13] Michelle Eckhart Declaration, ¶ 14, Doc. 27-5.
[14] Defendant's exhibit 3, ¶ 14; Defendant's exhibit 3-C.

for services that Cook provided MHPSA at the Lake Charles Power Station.[15] Felix/Eckhart returned the purchase order by email on July 1, 2019; the purchase order was accepted and signed by Dustin House of NES on behalf of NES on June 25, 2019.[16]

Paragraph 19 of the purchase order requires NES to name MHPSA and its "customer" as additional insureds on the insurance required by the provision.[17]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

---

[15] Defendant's exhibit 3, ¶ 15.
[16] Defendant's exhibit 3, ¶ 16; Defendant's exhibit 3-D.
[17] Defendant's exhibit 3-C, p. 8.

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

In this lawsuit, Tokio seeks a judgment against Ace, declaring that Tokio's alleged additional insured, CB&I, is an additional insured, and therefore, Tokio is owed defense and indemnity under the Ace Policy issued by Ace to NES with respect to the claims made against CB&I in the lawsuit captioned: *Ricky Cook v. Entergy Corp., et al*, Civ. Action No. 2020-1940 in the 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana ("Cook Lawsuit"). In the Cook Lawsuit, Cook sued CB&I, an alleged customer of MHPSA and named insured on the Ace Policy. Tokio is defending CB&I, under a reservation of rights, under a policy issued by Tokio to MHPSA. Tokio seeks reimbursement and/or

contribution toward the costs it has incurred in defending CB&I in the Cook Lawsuit, and with regard to any settlement or judgment.[18]

Regarding the instant motion, Ace moves for summary judgment in its favor, that CB&I does not qualify as an additional insured under the Ace Policy, and thus, CB&I is not entitled to a defense, nor indemnity with respect to the Cook Lawsuit. It is undisputed that CB&I is not a named insured on the Ace Policy, and CB&I does not fall within the scope of any of the provisions of the "Section II—Who Is an Insured" portion of the policy. Ace contends that CB&I cannot be entitled to coverage as an insured under the Ace Policy unless it qualifies as an "additional insured" under one of the Policy's "additional insured" endorsements. To qualify as an additional insured, Ace argues that the "Blanket Additional Insured(s) Written Contract Endorsement" ("Contract Endorsement") and the "Additional Insured – Designated Person or Organization" Endorsement" ("Designated Person Endorsement"), do not provide CB&I with "Additional Insured" status, and therefore CB&I Is not entitled to a defense and/or indemnity under either of these two Endorsements.

First, Tokio, contends that Ace's motion for summary judgment should be denied because Ace omitted two additional insured endorsements—"CG 2010 10-01 ADDITIONAL INSURED – OWNERS, LESSEES OR" AND "CG 2037 10-01 ADDITIONAL INSURED – OWNERS, LESSEES OR"[19] that are referenced in the

---

[18] Ace informs the Court that MHPSA was recently added as a Defendant in the Cook Lawsuit, which is set for trial for March 2025. Thus, any determination of reimbursement and/or contribution obligations for a settlement or judgment is premature, and furthermore any determination or reimbursement and/or contribution for the expense of defending CB&I will not be complete.
[19] Doc. 27-3, p. 12.

Page **8** of **18**

Schedule of Forms and Endorsements. Tokio complains that these two endorsements were not attached to the Ace Policy that Ace submitted with its Motion for Summary Judgment.

Ace responds that those two endorsements are not part of the Ace Policy and asserts that the Ace Policy was issued to NES without these two referenced "named insured" endorsements as confirmed by the certification.[20] Additionally, Ace insists that the Court can and should rule on the applicability of the two "additional insured" endorsements that are included in the Ace Policy. Tokio has provide no summary judgment evidence to establish that these two Endorsements referenced in the Schedule of Forms and Endorsements is part of the Ace Policy.

*Contract Endorsement*

Ace argues that CB&I does not qualify as an additional insured under the Contract Endorsement. Ace contends that the Contract Endorsement requires that NES have a written contract with CB&I, which at the time of Cook's accident, CB&I did not have. Thus, Ace maintains that because at the time of the Cook's accident, there was no written contract between NES and CB&I, CB&I is not an additional insured and Tokio's claims for defense and indemnity in this lawsuit must fail.

Tokio argues that it was not necessary for NES to have a written contract with CB&I for there to be coverage under the Ace Policy Blanket Additional Insured Endorsement. Tokio contends that CB&I was covered because it was the customer of MHPSA and the NES-MHPSA Contract required Additional Insured Coverage for any organization if

---

[20] Doc. 27-3, p. 1.

required under a written contract. Specifically, the NES-MPHSA contract obligated NES to have the policy "endorsed to include MHPSA and ***its customer*** as additional insured."[21] CB&I was MHPSA's customer. Therefore, Ace's argument here fails.

Tokio suggests that the key issue is the meaning of the term "executed" in the Contract Endorsements. In other words, was the contract between Ace's insured, NES, and Tokio's insured, MHPSA, "executed" when the parties were performing that contract, or was it "executed" only when signed, which was after the Cook electrocution?

Here, Tokio remarks that the Ace Policy does not define the term "execute" or "executed," and repeatedly uses a variation of the terms "signed", "signing", and "signature." As such, Tokio contends that the term "execute" must have a different meaning. Tokio then informs the Court that Burgess, the contact buyer for MHPSA on the NES-MHPSA contract, had signed the contract, which included an attachment of the Terms and Conditions and "Final Agreed upon Terms and Conditions", dated 5/19/2016.[22] Burgess sent the contract/Purchase Order to NES in response to a request by Felix/Eckhart, the Senior Account Manager for NES.[23] This contract/Purchase Order electronically signed by Burgess was sent via email to NES on June 12, 2019, before Cook was injured.[24] The document was signed by NES on June 25, 2019.[25] Ace's position is that the contract/Purchase Order was not yet executed as of June 12, 2019, the date of Cook's

---

[21] Doc. 27-4, p. 3, ¶ ¶ 6-8.
[22] Doc. 27-5, p. 12.
[23] Defendant's exhibit, K. Burgess Depo. pp. 14-15 attached as Exhibit C.
[24] Defendant's exhibit, K. Burgess Depo. p. 18:7-19:8, attached as Exhibit C.
[25] Defendant's exhibit, K. Burgess Depo. p. 20:7-9, attached as Exhibit C.

incident, therefore there was no written contract, and as such, CB&I was not covered under the Ace policy as a Blanket Additional Insured under the Contract Endorsement.

The record establishes that Cook started performing work as a TFA on June 4, 2019, at the Lake Charles Power Station. The term and conditions for the Purchase Order were negotiated and agreed upon May 19, 2016.[26] These entities had a continual working relationship for several years prior to the June 12, 2019, incident. Burgess sent the signed Purchase Order on June 12, 2019, and Cook had already began performing duties as to that Purchase Order prior to June 12, 2019. As such, the Court finds that Plaintiff has submitted sufficient summary judgment evidence to create a genuine issue of material fact for trial as to whether there was an executed written contract between MHSPA and NES.

The Ace Policy included the Blanket Additional Insured Endorsement which provides an "Insured" is "any natural person or organization with which any Named Insured has a written contract (i) in effect during the policy period and (ii) executed prior to the "bodily injury", "property damage" or "personal and advertising injury" occurring or being committed, if such written contract requires that this policy include such natural person or organization as an insured hereunder."

Ace argues that the Complaint fails to allege that there was a written contract between NES and CB&I that obligated NES to add CB&I or Cook as an insured. As previously noted by Tokio, the NES-MPHSA contract obligated NES to have the policy "endorsed to include MHPSA and its customer ("CB&I") as an additional insured.[27]

---

[26] Defendant's exhibit, K. Burgess Depo. p. 23:13-16, attached as exhibit B and C.
[27] Doc. 27-4, p. 3, ¶¶ 6-8.

Ace next argues that the accident did not occur at a premises used to conduct NES's business operations as required by ¶ 1(b) of the Contract Endorsement. The incident occurred at the Lake Charles Power Station where Cook was working as an employee of NES, when he was injured. Ace contends that there is no indication in the Cook Lawsuit pleading or in Tokio's Complaint in this matter, that the Lake Charles Power Station was used to conduct NES's business operations. Ace argues that the Lake Charles Power Station was not a premise that was used to conduct NES's business operations, thus CB&I is not entitled to "additional coverage" under the Contract Endorsement.

Tokio asserts that when Cook reported to work at the Lake Charles Power Station, he underwent Site-Specific Safety Training required by CB&I.[28] Tokio remarks that NES sent Cook to work as a TFA to the Lake Charles Power Station on behalf of MPHSA to monitor the commissioning of the DC units A&B at Control package B.[29] Thus, Tokio maintains that Cook was conducting NES business operations at the site when he was injured. Here, it appears that there is a genuine issue of fact for trial as to NES's purported business operations at the Lake Charles Power Station. Cook has been alleged to be an employee of NES, but was monitoring on behalf on MPHSA, who had a contract with NES. As such, the Court cannot conclusively determine that the Lake Charles Power Station was not being used to conduct NES's business operations.

Next, Ace argues that the Contract Endorsement does not provide coverage to CB&I because Cook's injuries were not caused solely by NES. Ace points out that Cook named

---

[28] Doc. 27-4, pp. 3-4, ¶¶ 12-15.
[29] *Id.*, ¶ 20.

at least 10 individuals and companies as defendants in the Cook Lawsuit and made no allegations regarding the negligence of NES or any of its employees.[30] Tokio asserts that Cook's injuries were potentially caused by NES, as indicated by MHPSA in its tender to NES—that the loss was caused solely by the acts of NES or Cook.[31] Again, it has been alleged that Cook was working as an employee of NES.

Here, while it may be premature to decide if indemnity is owed, an insurer's duty to defend is broader than its liability for damages claim. This duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1960); *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La. 1987). An insurer's defense obligation can exist even where there is ultimately no coverage. *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.*, 943 So.2d 429, 447-48 (La.App. 1 Cir. 2006) (where allegations in petition were broad enough to fall outside the scope of the policy exclusion, insurer breached its duty to defend, although the exclusion actually precluded coverage); *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 286-87 (5th Cir. 2006) (a petition must be liberally construed in favor of the insured; because state court allegations do not unambiguously exclude coverage, the insured has a duty to defend its insured).

Tokio remarks that in its tender to MHPSA, which MHPSA tendered to NES, counsel for CB&I asserted that Cook's injuries were caused solely by the acts of NES or

---

[30] Defendant's exhibit 2; Doc. 1, Complaint.
[31] Plaintiff's exhibit, K. Burgess Depo. p. 1, attached as Exhibit A to Thornton Declaration.

Cook. Also, of note, because NES was Cook's employer, NES could not be named and sued in the Cook Lawsuit.[32] The Court finds that there is a genuine issue of material fact as to NES's potential fault, and/or it would be premature at this juncture to make that determination.

Ace notes that ¶ 1(c) of the Endorsement provides that no coverage or defense shall be afforded to an additional insured under the Endorsement "where there is no coverage under the Ace Policy for the named insured,"[33] namely NES. Ace argues that the Contract Endorsement does not provide coverage to CB&I because NES, as Cook's employer, would not be covered under the Ace Policy with respect to Cook's alleged damages. Ace contends that the Ace Policy has an "Employer's Liability" exclusion, which excludes coverage for "'[b]odily injury' to: (1) An 'employee' of the insured arising out of and in the course of . . . (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business.'"[34]

Ace argues that Cook was an employee of NES, and therefore Cook's alleged injuries are excluded because NES would not be entitled to coverage under the Ace Policy for the Cook Lawsuit. Ace contends if Cook attempted to make a claim against the Named Insured NES, there could be no coverage because as an employee of NES, Cook's sole remedy would be under the Louisiana Worker's Compensation Act, not the Ace Policy.

Ace relies on the Ace Policy's "Workers' Compensation and Similar Laws" exclusion that precludes coverage for "[a]ny obligation of the insured under a workers'

---

[32] Plaintiff's exhibit, K. Burgess Depo. p. 2, attached as Exhibit A to Thornton Declaration.
[33] *Id.* ACE_American-000101.
[34] Defendant's exhibit 1, p.2.

compensation, disability benefits or unemployment compensation law or any similar law."[35]

Tokio argues that the Employer's Liability exclusion is specific to "the" insured, meaning the insured being sued, and it does not apply to "all" insureds, or "any" insureds or "an" insured, citing *Osobrn v. Nat'l Union Fire Ins. Co.*, 632 So.2d 1158, 1160 (La. 1994). Tokio remarks that the Ace Policy contains a "Separation Of Insureds" provision in Conditions which provides that "[e]xcept with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the Named Insured, this insurance applies: [¶] a. As if each Named Insured were the only Named Insured; and [¶] b. Separately to each insured against whom claim is made or "suit" is brought.[36] Tokio maintains that the NES-MHPSA contract required that the additional insured coverage for MHPSA and its customer, CB&I, "include a cross liability and severability of interest clause".[37]

Ace argues that the Separation of Insureds' provision is of no moment because the Ace Policy exclusions (Employer Liability exclusion) expressly excludes all coverage for the Named Insured, NES. Thus, Ace posits that the "Blanket Additional Insured(s) Written Contract Endorsement" of the Ace Policy explicitly does not afford additional-insured coverage where there is no coverage under the policy of the Named Insured. Thus, Ace posits that because NES is not entitled to coverage under the Ace Policy regarding the Cook Lawsuit, neither is any putative additional insured under the Contract Endorsement.

---

[35] Doc. 27-3, p. 31, ACE_AMERICAN-000103.
[36] Doc. 27-3, p. 42, ¶ 7.
[37] Doc. 27-5, par 29.

The Court agrees with Ace and finds that because Cook is an employee of NES, and ¶ 1(c) expressly provides no coverage or defense shall be afforded to an additional insured under the endorsement where there is no coverage under the Ace Policy for the named insured, CB&I is not entitled to "additional insured" coverage under the Contract Endorsement.

*Designated Person Endorsement*

Ace argues that CB&I does not qualify as an additional insured under the Designated Person Endorsement regarding the Cook Lawsuit because NES did not "agree to include [CB&I] as an individual insured under a "written contract" that "was executed prior to the date of loss", as required by the Designated Person Endorsement.

The Schedule contained in the Designated Person Endorsement states under "Name of Additional Insured Person(s) or Organization" that "[a]ny person or organization whom you have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of the loss."[38]

Ace argues that there was no written contract executed prior to the date of the loss. Specifically, Ace relies on the express language requiring that the contract be executed prior to the "***date of the loss.***" Ace points out that this language requires that the contract be executed at least the day prior to Cook's June 12, 2019, incident—June 11, 2019. It is undisputed that Burgess sent the signed contract/Purchase Order to NES on June 12, 2019, and it was not "signed" until after the June 12, 2019.

---

[38] Defendant's exhibit 1, ACE_AMERICAN-000127.

Tokio suggests that NES agreed to include CB&I and the contract was executed before the June 12, 2019, accident. Again, Tokio relies on the undefined term "execute," and its position that execute has a different meaning than signing. Tokio argues that the interpretation of the Ace Policy must be construed against Ace as the author. Tokio submits that if Ace wanted coverage to be limited to after the contract was signed, because it uses various terms in other provisions, such as "sign," "signed" and "signature," it would have used that term as opposed to "executed." With that in mind, the "contact buyer" Burgess signed the contract/purchase order on June 12, 2019, which had attached the "Final Agreed upon terms and conditions," dated 5/19/2016 between MHPSA and NES.[39] The contract was sent to NES on June 12, 2019. Thus, Tokio argues that the NES-MHPSA contract was executed when Cook's performance began, which the evidence established to have been June 4, 2019. Thus, Tokio posits that the contract was executed prior to Cook's injury.

First, the Court cannot ignore that the Ace Policy provision requires that the contract be "executed" prior ***to the date of the loss.*** While there may be a genuine issue of fact as to whether the contract was executed on June 12, 2019, or June 25, 2019, the date NES's representative signed the contract, the Court cannot say there is a genuine issue of material fact as to whether the contract was executed prior to the date of the loss. The contract/Purchase Order was not created, signed, nor accepted on the date prior to the date of the loss—June 11, 2019.

---

[39] Defendant's exhibit, Doc. 27-5, pp. 10-12.

Here, there is no genuine issue of material fact for trial and the Court find there is no coverage for CB&I for defense and indemnity under the Designated Person Endorsement.

## CONCLUSION

For the reasons explained herein, the Court will grant Ace American Insurance Company's Motion for Summary Judgment (Doc. 27) and dismiss this matter.

**THUS DONE AND SIGNED** in chambers on this 15th day of October, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE